UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

FRED HARRIS,

                Plaintiff,

     v.                                           9:14-CV-0436
                                                     (MAD/DEP)

GORDON, et al.,

                Defendants.

---

APPEARANCES:

FRED HARRIS
11-A-1870
Plaintiff, pro se
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

      Plaintiff Fred Harris commenced this action pro se by filing a civil rights complaint together with a motion for leave to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 7 ("IFP Application"). By Decision and Order of this Court filed October 7, 2014, plaintiff's IFP Application was granted but following review of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found that the complaint was subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 9 (the "October 2014 Order"). In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *Id.* Presently before this Court is plaintiff's amended

complaint.[1]  Dkt. No. 18 ("Am. Compl.").  Plaintiff has also submitted motions for appointment of counsel and preliminary injunctive relief.  Dkt. Nos. 20, 21.

## II.   DISCUSSION

### A.   Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the October 2014 Order and it will not be restated in this Decision and Order.  *See* October 2014 Order at 2-4.

### B.   Summary of the Amended Complaint

Plaintiff's amended complaint asserts claims arising out of his confinement at Clinton Correctional Facility ("Clinton C.F.").  The defendants are all employed by the New York State Department of Corrections and Community Supervision ("DOCCS").  The following facts are set forth as alleged by plaintiff in his amended complaint.  On July 24 and 25, 2013, defendant Gordon, while presiding as hearing officer over plaintiff's disciplinary proceeding, "failed to adequately" investigate plaintiff's claims that he had acted in self-defense, he had been attacked by another inmate, and he was confined at Clinton C.F. even though "there were serious risks to [his] life, health and safety due to his prior membership in a gang."  Am. Compl. at 2-3.  As a result of the hearing, defendant Gordon sentenced plaintiff to serve 60 days in keep-lock, which plaintiff claims amounted to a "severe and harsh punishment" because plaintiff was deprived of general population privileges "such as the right to attend religious services, vocational and educational programs, access to recreation, phone and

---

[1] Plaintiff requested and was granted multiple extensions of time to submit his amended complaint.  *See* Dkt. Nos. 10, 11, 12, 13, 16, and 17.

packages as well as commissary." *Id.* at 3.

"[O]n numerous occasions" plaintiff brought to the attention of defendants LaValley, Brown, and Cross information regarding his former gang membership "which suggested that there were serious concerns for Plaintiff's safety and well being" if he was incarcerated at Clinton C.F., but they "disregarded" it. *Id.* at 3-4. The information was also available in DOCCS records. *Id.* at 3-4. As a result of their indifference to plaintiff's safety, plaintiff was cut in the face by another inmate on July 18, 2013. *Id.*

Plaintiff seeks monetary damages and declaratory relief. *Id.* at 4. For a more complete statement of plaintiff's claims, refer to the amended complaint.

Construed liberally, plaintiff asserts a Fourteenth Amendment due process claim against defendant Gordon and Eighth Amendment failure-to-protect claims against defendants Brown, LaValley, and Cross.

## C.     Sufficiency of the Amended Complaint

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Any complaint that fails to allege personal involvement in the alleged

unlawful conduct is "'fatally defective' on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987).

### 1. Official Capacity

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's amended complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).[2]

---

[2] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought

Thus, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against the defendants in their official capacities, *see* Am. Compl. at 1-2, those claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) because they are barred by the Eleventh Amendment.

**2. Fourteenth Amendment Due Process**

As plaintiff was advised in the October 2014 Order:

> To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).
> In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin,* 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).
> While not the only factor to be considered, the duration of a

---

directly against the state, or a state agency, but only against state officials in their official capacities).

>disciplinary confinement remains significant under *Sandin*.[3] *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

October 2014 Order at 6-8.

After reviewing plaintiff's complaint, the Court found that plaintiff "failed to plead the existence of a valid liberty interest with respect to his 60-day keeplock confinement because (1) that sentence would not, in and of itself implicate atypicality and (2) his complaint include[d] no facts to plausibly suggest that his confinement in keeplock for 60 days imposed an atypical and significant hardship." *Id.* at 8.[4] Construing the amended complaint liberally, plaintiff now alleges that his 60-day keeplock confinement was an atypical and significant hardship because during the 60 days, he was denied the privileges given to general population inmates, such as access to religious services, programs, recreation, phone, packages, and commissary. Am. Compl. at 3. However, courts considering inmate claims regarding denial of participation in or access to prison programs or privileges under *Sandin*

---

[3] For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate. *Sandin*, 515 U.S. at 485-86. In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence. *Id.*

[4] A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000); N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008). An inmate on "keeplock" is confined to his cell, room or housing unit and does not enjoy full participation in the normal prison routine. *See Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); N.Y. Comp. Codes R. & Regs. tit. 7, § 251-1.6 (2008).

6

have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life. *See Lewis v. Murphy*, No. 9:12-CV-0268 (NAM/CFH), 2014 WL 3729362, at *9 (N.D.N.Y. July 25, 2014) (inability to communicate with the outside world through telephone or mail is not atypical); *Borcsok v. Early*, No. 9:03-CV-0395 (GLS/RFT), 2007 WL 2454196, at *9 (N.D.N.Y. Aug. 23, 2007) (finding that a ninety-day confinement in SHU with a ninety-day loss of packages, commissary and telephone privileges is insufficient to raise a liberty interest); *Edmonson v. Coughlin*, 21 F. Supp. 2d 242, 249, 250 (W.D.N.Y. 1998) (plaintiff's inability to participate in congregate activities such as group counseling, and religious services during his eight months of administrative segregation is not a protected liberty interest); *Troy v. Kuhlmann*, No. 96 Civ. 7190, 1999 WL 825622, at *12 (S.D.N.Y. Oct. 15, 1999) (denial of telephone, package and commissary privileges does not impose "atypical and significant hardship").  Plaintiff has therefore failed to plead the existence of a valid liberty interest with respect to his 60-day keep-lock confinement.  Without denial of a cognizable liberty interest, there can be no due process violation.  *See Gill v. Riddick*, No. 9:03-CV-1456 (NAM/RFT), 2005 WL 755745, at *15 (N.D.N.Y. Mar. 31, 2005) ("[W]here no liberty interests are at stake, . . . the Court need not assess the adequacy of the process . . . received.").  Thus, the amended complaint does not allege facts sufficient to plausibly suggest that plaintiff was disciplined in violation of his right to due process.[5]

As a result, plaintiff's Fourteenth Amendment due process claim against the defendant Gordon is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure

---

[5] To the extent that plaintiff attempts to assert a separate constitutional claim against defendant Gordon for not conducting an adequate investigation into the charges lodged against plaintiff, the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases).

to state a claim upon which relief may be granted.

### 3. Eighth Amendment Failure to Protect

Under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). In *Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id.* Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the amended complaint alleges enough to warrant a response from defendants LaValley, Brown, and Cross to the Eighth Amendment failure to protect claims. In so ruling, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### D. Motion for Appointment of Counsel

Turning to plaintiff's motion for appointment of counsel (Dkt. No. 20), courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a

number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

Even if the Court were to assume, for purposes of this motion, that plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under Section 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez*, 899 F. Supp. at 974; (4) if this case survives any dispositive motions filed by defendants, it is highly probable that this Court will appoint trial

counsel at the final pretrial conference; and (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

Thus, plaintiff's motion for the appointment of counsel (Dkt. No. 20) is denied.

### E.   Motion for Preliminary Injunctive Relief

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).  However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher.  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).  A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim).  The same standards used to review a request for a preliminary injunction govern consideration of

an application for a temporary restraining order.  *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008).  The district court has wide discretion in determining whether to grant preliminary injunctive relief.  *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Plaintiff, who is now incarcerated at Five Points Correctional Facility ("Five Points C.F."), wants an investigation to find out why "Clinton Corr. Fac. Mental Health" authorized that he be monitored in his cell and that an "illegal electronic/heat sensor" be placed in his cell at Five Points C.F.  Dkt. No. 21 at 1.  Plaintiff claims that the electronic sensor, which is controlled by staff at Five Points C.F., makes his mattress hot, his "muscles tremble and decay," and interferes with his eating.  *Id.*  Construed liberally, plaintiff appears to seek a court order enjoining "Mental Health" and staff at Five Points C.F. from using the electronic sensor.  *Id.*

"'To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.'"  *Candelaria v. Baker,* No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted).  *See, e.g., Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties denied where complaint alleged denial of mental health care and improper conditions of confinement); *Lewis v. Johnston*, No. 9:08-CV-0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that

11

occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007). "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel, Inc. v. Trans World Airlines,* 111 F.3d 14, 16 (4th Cir. 1997); *accord Ball v. Famiglio*, 396 Fed. App'x 836, 837 (3d Cir. 2010); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Devose v. Harrington*, 42 F.3d 470, 471 (8th Cir. 1994).

Here, the allegations that form the basis for plaintiff's motion for injunctive relief – namely his conditions of confinement at Five Points C.F. – are not sufficiently related to the claims in the complaint that defendants failed to protect him from known danger and denied him due process when he was previously incarcerated at Clinton C.F. Thus, the motion can be denied on this basis alone. Moreover, even if any of the alleged misconduct were related, plaintiff fails to substantiate any allegations of irreparable harm with evidence in admissible form or to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").

Insofar as plaintiff seeks to enjoin the actions of non-parties, i.e. "Mental Health" or staff at Five Points C.F., the Court lacks subject matter jurisdiction to enjoin their actions. *See Stewart v. United States I.N.S.,* 762 F.2d 193, 198-99 (2d Cir. 1985) (preliminary injunctive relief may be obtained "[o]nly after an action has been commenced"); *Williams v. State Univ. of New York*, 635 F. Supp. 1243, 1246 (E.D.N.Y. 1986) ("prior to the filing of a

complaint a court lacks subject matter jurisdiction and is powerless to grant preliminary injunctive relief"); *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

For all of the foregoing reasons, plaintiff's motion for preliminary injunctive relief (Dkt. No. 21) is denied.

## III.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's claims seeking monetary damages from the defendants in their official capacities and plaintiff's Fourteenth Amendment due process claim against defendant Gordon are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[6] and it is further

**ORDERED** that Gordon is **DISMISSED without prejudice** as a defendant; and it is further

**ORDERED** that plaintiff's Eighth Amendment failure to protect claims against defendants LaValley, Brown, and Cross survive sua sponte review and require a response; and it is further

---

[6] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Moreover, leave to amend is not required where plaintiff was already given one opportunity to amend. *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once). Plaintiff has already had one opportunity to amend his claims, and the Court finds that amendment of these claims would be futile.

**ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants LaValley, Brown, and Cross.  The Clerk shall forward a copy of the summons and amended complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that defendants LaValley, Brown, and Cross, or their counsel, respond to the Eighth Amendment failure to protect claims set forth in the amended complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff's motion for appointment of counsel (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated:   May 21, 2015
         Albany, NY

_____
Mae A. D'Agostino
U.S. District Judge